Steven John Moser (SM1133)
Moser Law Firm, PC
3 School Street, Suite 207B
Glen Cove, New York 11542
(516) 671-1150
smoser@moseremploymentlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Maria Suarez,

                Plaintiff,    **COMPLAINT**

      -*against*-    **JURY TRIAL DEMANDED**

Southern Glazer's Wine and Spirits of New York, LLC,

                Defendant.

Plaintiff Maria Suarez and alleges as follows:

### NATURE OF CLAIMS

1. Plaintiff brings this case to remedy Defendant's violations of the anti-retaliation provisions of the Equal Pay Act, the New York Labor Law, Title VII of the Civil Rights Act of 1964, and the New York Human Rights Law.

2. Defendant retaliated against and discharged the Plaintiff, after Plaintiff opposed Defendant's discriminatory practices, was identified as a witness against Defendant in equal pay and sex discrimination lawsuits and gave deposition testimony in such lawsuits which was unfavorable to the Defendant.

3. Plaintiff also brings this lawsuit for unpaid overtime under the New York Labor Law.

1

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over the Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343, because they arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

5. This Court has original subject matter jurisdiction over the Equal Pay Act (EPA) claims pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343, and 29 U.S.C. § 216(b).

6. In addition, this Court has supplemental jurisdiction over the New York Human Rights Law and New York Labor Law claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e-5(f)(3), because the cause of action arose and the acts and omissions complained of occurred in this district.

8. Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites to her Title VII claims. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about September 25, 2018. By notice dated October 8, 2019, the EEOC issued a Notice of Right to Sue.

9. Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

### *Plaintiff*

10. Plaintiff Maria Suarez ("Ms. Suarez") resides in Nassau County in the State of New York.

11. Ms. Suarez is female.

12. Ms. Suarez was employed by Southern Glazer's Wine and Spirits of New York, LLC (formerly Southern Wine & Spirits of New York, LLC) from 2004 until approximately April 6, 2018.

*Defendant*

13. Defendant Southern Glazer's Wine and Spirits of New York, LLC (hereinafter "Southern") is a Florida Limited Liability Company.

14. Defendant Southern is authorized to conduct business in and by the State of New York.

15. Defendant Southern maintains a principal place of business in Syosset, New York.

16. At all relevant times Southern has been a "person" as defined in 42 U.S.C. §§ 2000e(a).

17. At all relevant times, Southern has continuously been an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. §§ 2000e(b), (g) and (h).

18. At all relevant times Southern has been a "person" as defined in 29 U.S.C. § 203(a).

19. Southern was the Plaintiff's "employer" as defined in N.Y. Labor Law § 2.

20. At all relevant times Southern has been a "person" as defined in N.Y. Labor Law § 2.

21. Southern was the Plaintiff's "employer" as defined in N.Y. Executive Law § 292,

22. At all relevant times, Southern has been a "person" as defined in N.Y. Executive Law § 292.

## FACTS

23. Plaintiff Maria Suarez began working for Southern in December 2004 as an administrative assistant.

24. In October 2007, Ms. Suarez was promoted to Inventory Supervisor, later retitled Inventory Control Manager.

25. In 2007 the collective bargaining agreement in effect between the Defendant and Wine, Liquor & Distillery Workers Local 1-D classified union members as either "warehouse" or "clerical" employees.

26. From 2004 until at least 2017, Southern did not hire any females into the "warehouse" classified position.

27. From 2004 until at least 2017, Southern's "warehouse" classified workforce was 100% male.

28. The "warehouse" classified workers were widely referred to by managers and employees of Southern as "warehousemen."

29. As Inventory Control Manager, Ms. Suarez was responsible for supervising employees of the Inventory Control Department.

30. As of February 16, 2009, the Inventory Control Department was 100% female and consisted of the Ms. Suarez and three Inventory Control Clerks – Tatiana Herdocia, Ena Scott, and Josianne Sajous.

31. Beginning in 2008 the female Inventory Control Clerks supervised by Maria Suarez began pushing to be classified as "warehouse" employees. They believed they were continuously denied the classification because they were women.

32. Although the female inventory control clerks were classified as "clerical" employees, they worked in the warehouse, used machinery, lifted cases of wine and spirits, performed inventory counts, and were exposed to the same risks as "warehousemen."

33. Ms. Suarez believed that the women in her department should be classified as "warehouse" employees and brought this to the attention of her direct supervisor, John Wilkinson.

34. On February 17, 2009 Southern hired a male Inventory Control Clerk by the name of Justin Veigh.

35. On May 2, 2013, while reviewing payroll records for her department, Ms. Suarez noticed that the three women in her department were classified as "admin" (or "clerical") while the only male in her department was classified as "warehouse."

36. Ms. Suarez commented about her observation out loud and was heard by the three female inventory control clerks.

37. That same day, Ms. Suarez sent an email to John Wilkinson stating that her "team was classified differently by payroll" and that while she was sure it was "just a mistake, [] it looks like they were classified by sex."

38. Wilkinson forwarded the email to Dina Wald-Margolis of Southern's Human Resources Department at approximately 1:00 PM on May 2, 2013.

39. At approximately 1:30 PM on May 23, 2013, Ms. Wald-Margolis emailed Ms. Suarez.  Ms. Wald-Margolis agreed that "the subcategory seems to be different for 3 out of the 4 employees", but "guaranteed" that the different classification was not "based on gender."

40. After May 2, 2013 Wald-Margolis met with the three female Inventory Control Clerks and unsuccessfully attempted to convince them that they were not being discriminated against based upon sex.

41. The three women supervised by the Plaintiff eventually filed lawsuits against Southern.

42. Before those lawsuits were commenced, the Plaintiff earned satisfactory performance appraisals.

43. For example, in annual performance appraisals dated April 15, 2010 and April 1, 2011, Southern rated the Plaintiff as a "performer" overall. The "performer" rating means that "[a]ll key job expectations are met and sometimes exceeded with normal direction and assistance", and that the employee is "[a] solid performer who displays all the behaviors required for successful job performance."

44. In a performance appraisal dated March 1, 2012, Southern rated the Plaintiff as a "high performer" overall. The "high performer" rating means that the employee "[o]ften exceeds and consistently meets all key performance expectations", and that the employee's "[a]ccomplishments and contributions are higher than required by the job."

45. In a performance appraisal dated February 1, 2013, Southern again rated the Plaintiff as a "performer" overall.

46. In the performance evaluation furnished to the Plaintiff on May 20, 2014 the Plaintiff was rated as a "performer" overall. Plaintiff's supervisor, John Wilkinson wrote:

> (a) "Maria takes action to make improvements without being asked. She takes initiative and constantly looks for work to do that will improve her

6

       departments results. Maria takes care with work and pays attention to details. She displays a positive, 'can do' attitude and has a sense of urgency."

(b) "Maria takes personal accountability for own activities and results and seeks to assist with team results, this is clearly evident during each physical inventory when issues arise. She continuously raises the bar on her own performance. She always looks for ways to do the job at hand in a smarter way. She constantly monitors progress against goals; has a sense of urgency [. . .] She does not let obstacles get in the way of goal achievement.

(c) Maria is reliable – [she] shows up consistently; delivers on commitments. She develops a broad set of internal and external relationships to get work done. Maria projects a professional image at all times.

47.    Two later, on May 22, 2014, Tatiana Herdocia and Ina Scott filed a lawsuit against Southern in the Eastern District of New York. *See Herdocia v. Southern Wine & Spirits of America, Inc.*, 14-cv-03196(JMA)(ARL)("the *Herdocia* lawsuit").

48.    The *Herdocia* lawsuit alleged that Southern had violated the U.S. Equal Pay Act (29 U.S.C. § 206(d)), and the New York Equal Pay Act (N.Y. Lab. Law § 194), by failing to pay the female inventory control clerks equal pay for equal work. The lawsuit also alleged sex discrimination in violation of the New York Human Rights Law (N.Y. Exec. Law. § 296). *See Herdocia v. Southern Wine & Spirits of America, Inc.*, 14-cv-03196 (Compl., ECF No. 1).

49.    Josianne Sajous filed a lawsuit against Southern in the Eastern District of New York on filed on January 4, 2015. *See Sajous v. Southern Wine & Spirits of New York, Inc.,* 15-cv-03270(JS)(ARL)("the *Sajous* lawsuit").

50. The *Sajous* lawsuit also alleged that Southern had violated the U.S. Equal Pay Act (29 U.S.C. § 206(d)), and the New York Equal Pay Act (N.Y. Lab. Law § 194) by failing to pay female employees equal pay for equal work. The lawsuit also alleged sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq and the New York Human Rights Law (N.Y. Exec. Law. § 296). *See Sajous v. Southern Wine & Spirits of New York, Inc.,* 15-cv-03270(JS)(ARL)(Compl., ECF No. 1).

51. Once the lawsuits were filed, the Defendants engaged in a pattern of discrimination and retaliation against the Plaintiff.

52. Consistent with Southern policy, Prior to the commencement of the *Herdocia* and *Sajous* lawsuits, the Plaintiff had been issued performance evaluations on a yearly basis.

53. A performance evaluation covering 2013 was furnished to the Plaintiff on May 20, 2014.

54. Southern did not furnish the Plaintiff with a performance evaluation covering 2014.

55. Southern did not furnish the Plaintiff with a performance evaluation covering 2015.

56. In approximately May 2016, although Southern had not furnished the Plaintiff with a performance evaluation since before the *Herdocia* and *Sajous* lawsuits were commenced, Southern approached the Plaintiff with an offer to become a "WMI Administrator."

57. Kevin Randall, VP of Operations, told the Plaintiff that as WMI Administrator, she would keep the same role, continue to manage her team, and would perform similar duties.

58. Kevin Randall told the Plaintiff that her yearly salary would be increased from $70,715.00 to $75,000.00 upon acceptance of the WMI Administrator position.

59. Kevin Randall told Ms. Suarez that her current position was being eliminated.

60. When the Plaintiff indicated that she would think about it, Kevin Randall stated words to the following effect: "The train is leaving. If you don't get on board you are going to be left behind."

61. As a result of these representations, the Plaintiff applied for and was given the new title of WMI Administrator.

62. The offer letter indicated that the Plaintiff would be "an exempt employee" and "not eligible to receive overtime" as WMI Administrator.

63. After the Plaintiff accepted the WMI Administrator position, Southern did not eliminate the plaintiff's former position. Instead, Southern gave another employee, Tonisha Durant, the title of "WMI/Inventory Control Manager."

64. Upon information and belief, when Tonisha Durant was promoted to the WMI/Inventory Control Manager position, Southern increased Ms. Durant's salary from $68,250 per year to $85,000.00 per year.

65. On June 7, 2016, plaintiff's counsel in the *Sajous* lawsuit served a notice to take the deposition of Maria Suarez.

66. In approximately July or August 2016, Southern stripped the Plaintiff of her supervisory authority.

67. Ms. Suarez' deposition in the *Sajous* lawsuit was originally noticed for July 6, 20156 and was rescheduled for October 7, 2016.

68. In early September 2016, just one month before Maria Suarez's scheduled deposition, Southern issued a memo to the Plaintiff titled "WMI Administrator Performance

9

Expectations." In the memo, John Wilkinson criticized the Plaintiff's performance and described her as "uncooperative."

69. On October 7, 2016 Ms. Suarez testified at a deposition in the *Sajous* lawsuit.

70. In preparing for her deposition, when she was asked by Southern's attorney if she believed that the Inventory Control Clerks were performing "warehouse work", she responded "yes."

71. Sothern's attorney responded in sum and substance: "That's what you *believe* but you don't *know* that." Throughout the preparation the attorney encouraged Suarez to default to "I don't know" when faced with a question.

72. At her deposition, Ms. Suarez answered the questions to the best of her ability.

73. Maria Suarez's deposition testimony in the Sajous lawsuit was damaging to Southern. At her deposition she testified that:

    (a) Josianne Sajous was a great employee.

    (b) All of the "warehouse" classified employees were men;

    (c) She had expressed her opinion to John Wilkinson that the Inventory Control Clerks in her department should be classified as "warehouse" employees;

    (d) The Inventory Control Clerks, like "warehousemen", wore safety footwear, did not dress in office attire, worked in the warehouse, operated machinery, and were required to park their vehicles in the "warehousemen's" parking lot.

    (e) Female Inventory Control Clerks performed the same work as male "Checkers."

74. Approximately one week after Maria Suarez's deposition, John Wilkinson entered her office and barked "get your things together, you are moving." She loaded her laptop,

docking station, monitor, papers and personal belonging onto her office chair and pushed the chair in front of her, following John Wilkinson.  He relocated her to the blue room (a common space used by warehouse supervisors and warehousemen located on the warehouse floor).

75. On or about October 25, 2016 John Wilkinson entered the blue room and had a loud conversation with Barry Finkelstein (the Warehouse manager) within feet of Ms. Suarez. Echoing the words of Southern's attorney, he exclaimed regarding his own testimony: "I just said, 'I don't know' and 'I don't remember.' That's the way it should be if you are loyal to the company."

76. On November 4, 2016, the Plaintiff was issued her first "Record of Disciplinary Action – Verbal Warning" ("disciplinary notice") in more than 12 years.

77. The November 4, 2016 disciplinary notice was issued to the Plaintiff for refusing to work a Saturday. On that particular Saturday, she had pre-approved vacation and had planned to pick up her elderly parents from the airport, who were visiting from abroad to celebrate their 50th wedding anniversary. Kevin Randall (VP of Operations) advised her only two days before (on November 3, 2016) that she would have to work. She explained to him why she was unable to work that day.  He responded by telling her that she didn't appreciate her job.

78. On Friday, November 4, 2016, Ms. Suarez was called into John Wilkinson's office and told by Beth Toohig (Southern's HR Director) to present tickets for a sporting event or concert as proof that she had a good enough reason not to work that Saturday.  When the Plaintiff did not produce the tickets, the disciplinary notice was issued.

79. Less than one month later, on December 1, 2016 Plaintiff was issued a second "Record of Disciplinary Action – Verbal Warning."

80. Just two weeks later, on December 16, 2016, John Wilkinson met with the Plaintiff and advised her that he was going to put her on a "Performance Improvement Plan" ("the Plan").

81. In January 2017, John Wilkinson presented the Plaintiff with the Plan. Among other things, the Plan ordered the Plaintiff to work from "8:30 am to 6:30 pm until the inventory issues have been resolved" as well as one full day on weekends if work was available.

82. Beginning in the summer of 2016, after the Plaintiff was stripped of her supervisory authority, she was no longer an exempt managerial employee.

83. Beginning in the summer of 2016, Southern took away the Plaintiff's discretion to make independent decisions, instead requiring her to report to and seek managerial approval from managers at Southern, including John Wilkinson and Tonisha Durant, thereby converting her to a non-exempt employee.

84. The Plaintiff was specifically directed by John Wilkinson in the January 2017 Plan to work overtime hours ("8:30 am to 6:30 pm", five days per week), as well as weekends.

85. The Plaintiff complied with John Wilkinson's instruction to work overtime hours during weekdays and on weekends.

86. Plaintiff was not compensated for all overtime hours worked.

87. In 2017, Southern issued the Plaintiff a negative and highly critical performance appraisal for the year 2016.

88. In 2018, Southern issued the Plaintiff a negative and highly critical performance appraisal for the year 2017.

89. On April 6, 2018, Southern terminated the Plaintiff as part of an alleged "restructuring."

## COUNT I

**Retaliation in Violation of the Equal Pay Act, and the Fair Labor Standards Act, 29 U.S.C. § 201,** *et seq.*

90. Plaintiff incorporates by reference all allegations in all preceding paragraphs as if fully alleged herein.

91. It is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee. . .has testified or is about to testify" in a proceeding under the FLSA. 29 U.S.C. § 215(a)(3).

92. As detailed in this complaint, Plaintiff engaged in activity protected by 29 U.S.C. § 215(a)(3).

93. The Defendant discriminated against the Plaintiff and discharged her because of her protected activity in violation of 29 U.S.C. § 215(a)(3).

## COUNT II

**Retaliation in Violation of N.Y. Lab. Law § 215**

94. Plaintiff incorporates by reference all allegations in all preceding paragraphs as if fully alleged herein.

95. It is unlawful for an employer or other person to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee…because such employee has made a complaint to his or her employer" of a violation of the Labor Law or "because such employee has testified or is about to testify in a[] or proceeding under this chapter." N.Y. Lab. Law § 215(1)(a).

96. As detailed in this complaint, the Plaintiff engaged in activity protected by N.Y. Labor Law § 215(1)(a).

97. The Defendant discriminated and retaliated against the Plaintiff and discharged her because of her protected activity in violation of N.Y. Labor Law § 215.

## COUNT III

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.

98. Plaintiff incorporates by reference each allegation of each preceding paragraph.

99. It is unlawful "for an employer to discriminate against any of his employees. . . because [s]he has opposed any [. . .] unlawful employment practice", or because the employee has "testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.S. § 2000e-3(a).

100. As detailed in this complaint, the Plaintiff engaged in activity protected by 42 U.S.C.S. § 2000e-3(a).

101. The Defendant discriminated against the Plaintiff and discharged her because of her protected activity.

## COUNT IV

### Retaliation in Violation of the New York State Human Rights Law, New York Executive Law § 296

102. Plaintiff incorporates by reference each allegation of each preceding paragraph.

103. It is unlawful "[f]or any employer, [] to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(1)(e).

14

104. As detailed in this complaint, Plaintiff engaged in activity protected by N.Y. Exec. Law § 296(1)(e).

105. The Defendant discriminated against the Plaintiff and discharged her because of her protected activity.

## COUNT IV

### Unpaid Overtime under the N.Y. Labor Law and Supporting Regulations

106. Plaintiff incorporates by reference each allegation of each preceding paragraph.

107. "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate[.]" 12 NYCRR § 142-2.2.

108. The Defendant employed the Plaintiff.

109. The Plaintiff was Defendant's employee.

110. The Plaintiff worked overtime hours at the direction of Defendant.

111. The Plaintiff was not paid one and one-half times her regular rate of pay for all overtime hours worked.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an award:

A. Reinstating the Plaintiff to her former position and salary, or an equivalent position;

B. Awarding Plaintiff back wages;

C. Awarding Plaintiff front wages in lieu of reinstatement;

D. Awarding Plaintiff liquidated damages in an amount of up to $20,000 under N.Y. Labor Law § 215;

E. Awarding Plaintiff punitive damages in amounts to be determined at trial;

15

  F. Awarding Plaintiff emotional damages in an amount to be determined at trial;

  G. Awarding Plaintiff overtime wages under the New York Labor Law;

  H. Awarding Plaintiff overtime wages in an amount equal to unpaid overtime under the New York Labor Law;

  I. Awarding Plaintiff such interest as is allowed by law;

  J. Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action; and

  K. Granting such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: Glen Cove, New York
   December 30, 2019

            Respectfully submitted,
            Moser Law Firm, PC

            *Steven John Moser*
            By:  Steven John Moser
            3 School Street, Suite 207B
            Glen Cove, New York  11542
            (516) 671-1150
            F (516) 882-5420
            smoser@moseremploymentlaw.com
            *Attorney for Plaintiff*