

175 Pearl Street
Suite C402
Brooklyn, NY 11201
Telephone: 646.341.6544
acabrera@constangy.com
646.341.6536

January 3, 2023

**VIA ECF**

Hon. Gary R. Brown
United States District Judge
United States District Court Eastern District of New York
100 Federal Plaza, Courtroom 940
Central Islip, NY 11722

      R:    **Maria Suarez v. Southern Glazer's Wine and Spirits of New York, LLC**
            **Case No. 2:19-cv-07271-GRB-SIL**

The Honorable Gary R. Brown:

Pursuant to Rules II(f) and (g) of Your Honor's Individual Rules of Practice, Defendant Southern Glazer's Wine and Spirits of New York, LLC ("SGWS") writes the Court to request a pre-motion conference on SGWS' motion for summary judgment.

In Plaintiff's Complaint, she asserts that SGWS retaliated against her under the Equal Pay Act, Fair Labor Standards Act, New York Labor Law ("NYLL"), Title VII of the Civil Rights Act of 1964, and New York State Human Rights Law and failed to pay her overtime in violation of the NYLL. Plaintiff's retaliation allegations are based on the following theory: she complained that women in the Inventory Control ("IC") department were denied a warehouse classification because they were women and, in retaliation, SGWS terminated her employment.

Plaintiff's retaliation claims fail for numerous reasons. First, Plaintiff did not engage in protected activity. She did not complain that IC clerks were classified based on their gender. Rather, her complaint was based on classification and not on gender discrimination. Plaintiff confirmed the nature of her complaint at her deposition in the Sajous lawsuit set forth in more depth in SGWS' 56.1 Statement. Second, the undisputed record will show there is no causal connection between those complaints and her April 2018 termination. There is not a single word, phrase, or sentence in the October 2016 deposition transcript that would motivate SGWS to retaliate against her. Further, Plaintiff was selected for layoff in large part because of chronic performance issues, which she was being held accountable *before* her October 2016 deposition. *See DiCesare v. Town of Stonington*, 823 F. App'x 19, at *3 (2d Cir. Aug. 14, 2020) ("where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Alabama   California   Colorado   Florida   Georgia   Massachusetts   Minnesota   Missouri
New Jersey   New York   North Carolina   South Carolina   Tennessee   Texas   Virginia

8770760v1

The Honorable Gary R. Brown  Constangy, Brooks, Smith & Prophete, LLP
January 3, 2023
Page 2

Plaintiff also asserts she made complaints in 2008 and 2013. The record will show there is still no causal nexus between those complaints and the termination. There is a massive time gap between those complaints and Plaintiff's layoff. It defines common sense to believe that SGWS waited 5 to 10 years to retaliate against her. *See Cantres v. N.Y.P. Holdings, Inc.*, 2016 WL 5867046, at *6 (E.D.N.Y. 2016) ("There can be no inference of causation where such a large gap in time exists between a plaintiff's protected activity and a defendant's alleged retaliation."); *Garret v. Garden City Hotel*, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (observing that "district courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation"); *Wu v. Metro-North Commuter Railroad Commuter Railroad Company*, 2016 WL 5793971, at *15 (S.D.N.Y., 2016) ("four months . . . is too large a gap in time to establish the causal nexus prong.").

Third, SGWS had legitimate, non-retaliatory reasons for terminating Plaintiff's employment. SGWS selected her, along with other 25 employees, for termination as part of a statewide reduction in force in New York. The selection criteria included job performance, position elimination, ability to perform the tasks required of those still employed, and suitability for the positions remaining after the reorganization. The record will show Plaintiff had chronic performance issues including errors with cycle counting and failure to communicate those errors. She was also obstinate during the WMI transition process and numerous training sessions. SGWS found that there were overlapping job functions between the WMI Administrator position and the WMI Inventory Control Manager position and it decided to eliminate the former position.

Plaintiff claims from approximately May 2016 until her termination she did not have supervisory authority over the IC clerks and SGWS should have classified her as non-exempt, entitling her to overtime. Plaintiff's allegations are contradicted by her own testimony in this matter wherein she admitted she supervised the IC clerks. Further, Plaintiff earned $75,000 starting in May 2016; was responsible for configuring, operating, overseeing and analyzing the WMI program; exercised direction and independent judgment over her responsibilities; influenced personnel and hiring decisions for the IC clerks; performed clerical work; and only performed under general supervision from Wilkinson. The record will prove SGWS properly classified Suarez as exempt during this time period based on the criteria of the executive and administrative exemptions under the NYLL. *See Torrengegra v. Grammen* America Inc., 2017 WL 1401291 (E.D.N.Y. Apr. 19, 2017). Plaintiff satisfied these exemptions before May 2016 as well.

For the foregoing reasons, SGWS' requests a pre-motion conference regarding SGWS' anticipated summary judgment motion. Thank you for Your Honor's consideration of SGWS' pre-motion conference request.

Sincerely,
/s/ Anjanette Cabrera
Anjanette Cabrera

8770760v1