IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA SUAREZ,<br><br>            Plaintiff,<br><br>    v.<br><br>SOUTHERN GLAZER'S WINE AND SPIRITS OF NEW YORK, LLC,<br><br>            Defendant. | Case No. 2:19-cv-07271-GRB-LGD |

## DECLARATION OF ELIZABETH TOOHIG

I, Elizabeth Toohig, make this declaration under 28 U.S.C. § 1746.

1. I am a former employee of Defendant Southern Glazer's Wine and Spirits of New York, LLC ("SGWS").

2. Southern Glazer's Wine and Spirits, LLC is a wholesale distributor of spirits, beer, wine, and related products. Southern Glazer's Wine and Spirits, LLC is headquartered in Miami, Florida, and maintains two primary distribution warehouses in New York: one in Syosset and another upstate in Syracuse.

3. On or about July 1, 2016, Southern Wine & Spirits of America, Inc. and Glazer's Inc. completed a transaction to form Southern Glazer's Wine and Spirits, LLC.

4. Southern Glazer's Wine and Spirits, LLC is the parent company of SGWS.

5. I started working for the company in 2010.

6. I was the Director of Human Resources from 2010 to 2012.

7. From December 2012 to December 2017, I was employed as the Vice President of Human Resources for the State of New York.

1

8. Thereafter, I was employed as the Vice President of Human Resources for Metro New York until December 31, 2018. I then worked as a consultant for SGWS until March 31, 2019.

9. I have not been affiliated with or employed by SGWS since March 31, 2019.

10. As the Vice President of Human Resources, I was responsible for hiring, discipline, performance evaluations, terminations and lay offs.

11. I oversaw approximately 1,500 employees.

12. I was aware of and involved in the employment decisions regarding Plaintiff Maria Suarez' ("Suarez") performance and her performance improvement plans ("PIP") between 2016 and 2018.

13. Before and after issuing the PIPs to Suarez, I spoke with her supervisor John Wilkinson and conducted an independent investigation into her performance issues, including attending all performance meetings between Wilkinson and Suarez, editing the PIPs, and being included on all emails regarding Suarez' performance.

14. I would also have conversations with Melissa Decker Johnson about Suarez' performance and Suarez' continued training on the WMI system.

15. I did this to make my own determination regarding the expectations and whether Suarez' performance issues were significant enough to place her on a PIP.

16. During the relevant time period, I reviewed all employment issues related to Suarez to ensure that she was being treated fairly, that there was no disparate treatment, and to make sure that Suarez was being held to an appropriate standard that correlated with her job duties and responsibilities as the WMI Administrator.

17. I sought to ensure that there were no external factors influencing employment decisions regarding Suarez.

18. Based on Suarez' continued performance issues during the relevant time period, which were documented on numerous occasions, I believe the PIP and employment decisions made regarding Suarez were in line with the needs of the business.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON DECEMBER 27, 2022**

_____
ELIZABETH TOOHIG

3